NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ERIC S. MILES, | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 04-03461 (JHR) |
| | : | |
| THE COUNTY OF CAMDEN, THE CITY OF | : | **OPINION** |
| PINE HILL, KEVIN KELLEJAN, MICHAEL | : | |
| CARROLL, JOSEPH SEVERINO, MARTIN | : | |
| DEVLIN, FRANK FALCO, ARTHUR | : | |
| FOLKES, and PINE HILL POLICE OFFICERS | : | |
| DOES #1-10, BADGE NUMBERS UNKNOWN,: | | |
| | : | |
| Defendants. | : | |

**Appearances:**

Eric S. Miles
479911 / 3-Wing  Lock Bag R
East Jersey State Prison
Rahway, NJ 07065
        *Pro Se*

Michael O. Kassak
White & Williams LLP
457 Haddonfield Road, Suite 400
Cherry Hill, NJ 08002-2220
        Attorney for The City of Pine Hill, Michael Carroll, and Pine Hill
        Police Officers Does #1-10, Badge Numbers Unknown

J. Andrew Kinsey
Florio, Perrucci, Steinhardt & Fader LLC
235 Frost Avenue
Phillipsburg, NJ 08865
        Attorney for Kevin Kellejan, Josph Severino,
        Martin Devlin, Frank Falco & Arthur Folkes

_____Lawrence M. Vecchio
Office of the Camden County Counsel
Camden County Courthouse
520 Market Street, 14th Floor
Camden, NJ 08102-1375
          Attorney for County of Camden


**RODRIGUEZ, Senior District Judge**

This matter comes before the Court on Defendants' Motions for Summary

Judgment [35, 40, 41].[1]  The Court has jurisdiction over Plaintiff's federal civil rights

claims pursuant to 28 U.S.C. §§ 1331, 1343.  The Court, having considered the parties'

submissions and decided the motion without oral argument pursuant to FED. R. CIV. P. 78,

and for the reasons set forth in this Opinion, will grant Defendants' Motions for Summary

Judgment with respect to Plaintiff's federal civil rights claims.  Declining to exercise

supplemental jurisdiction, the Court will dismiss Plaintiff's state law claims.

## I. FACTUAL BACKGROUND

This § 1983 civil rights action stems from the July 26, 2001 arrest, and later

criminal indictment, of Plaintiff Eric Miles ("Miles") for the murder of Marcus Willis at

the Pine Hill (N.J.) Gardens Apartments.  Miles alleges that the entire investigation

_____

[1]  Because this Opinion addresses three separate Motions for Summary Judgment,
it will refer to the Pine Hill defendants' (The City of Pine Hill, Michael Carroll, and Pine
Hill Police Officers Does #1-10, Badge Numbers Unknown) motion [35] as "Pine Hill
Def. Mot. Summ. J."; The County of Camden's motion [40] as "Camden Def. Mot.
Summ. J."; and the Camden County Prosecutors Office investigators' (Kevin Kellejan,
Joseph Severino, Martin Devlin, Frank Falco and Arthur Folkes) motion [41] as
"Investigator Def. Mot. Summ. J."

preceding his arrest suffered from gross improprieties and that his criminal indictment and conviction on lesser charges resulted from a conspiracy to "deprive [him] of his civil and constitutional rights including [his] rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of New Jersey."  (Am. Compl. ¶ 18; Pl. Opp., p. 3, ¶ 13.)

Specifically, Miles alleges that Defendants knew or should have known that probable cause did not exist to arrest him for the first-degree murder of Marcus Willis. (Am. Compl. ¶¶ 9, 13, 20; Pl. Opp., pp. 1-2, ¶  6; p. 2, ¶ 10; p. 3, ¶ 15.)  To secure a criminal indictment against him, Miles claims Defendants "intentionally falsified police reports, withheld exculpatory evidence, coerced witnesses, provided false information to Defense Counsel and submitted perjured testimony to the grand jury."  (Am. Compl. ¶ 14; Pl. Opp., p. 2, ¶ 11.)  Furthermore, Miles insists that Defendants "prepared statements in order to conceal their unlawful and unconstitutional conduct" and thus denied him his right to due process.  (Am. Compl. ¶ 26.)

Miles alleges that all Defendants acted under color of state law to deprive him of his Fourth and Fourteenth Amendment rights.  (Am. Compl. ¶ 31.)[2]  With respect to the City of Pine Hill and the County of Camden, Miles specifically claims that these public

---

[2] The Fourth Amendment (incorporated to the states by the Fourteenth) guarantees the right to be secure against unreasonable searches and seizures.  Section 1983 is a proper vehicle to vindicate this right.  See, e.g., Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000); Russo v. Voorhees Twp., 403 F. Supp. 2d 352, 356 (D.N.J. 2005).

entity Defendants permitted or encouraged the use of policies inimical to the public good; negligently hired, trained, and supervised their employees; and failed to discipline these employees for the improper conduct that inevitably flowed from such negligence.  (Am. Compl. ¶¶ 33-38.)

Not surprisingly, Defendants present a different view of the circumstances.  They present evidence that Defendant Camden County Senior Investigator Kevin Kellejan ("Kellejan") arrived at the Pine Hill Gardens Apartments on July 13 at approximately 4:05 a.m.  Once there, he learned that Marcus Willis and Ms. Michele Duckett had parked their vehicle in the apartment lot earlier that night.  (Pine Hill Def. Mot. Summ. J., Exh. B, pp. 1-2.)  When the two exited the vehicle, four or five men approached Willis and asked if he knew where to purchase marijuana.  (Pine Hill Def. Mot. Summ. J., Exh. B, p. 2.)  Willis told the men he did not, and carried his grocery bags to the apartment.  (Pine Hill Def. Mot. Summ. J., Exh. B, p. 2.)  He returned to the vehicle to retrieve an additional bag, only to be shot to death.  (Pine Hill Def. Mot. Summ. J., Exh. B, p. 2.)[3]

During the next week, Kellejan interviewed Ms. Duckett twice.  At the second interview, on July 18, 2001, Ms. Duckett identified Miles, Nathaniel Brooks, Eric Moore, and Jason Williams as four of the five men that approached the car.  (Pine Hill Def. Mot.

---

[3] Defendant Camden County Senior Investigator Joseph Severino later indicated the presence of six .32 caliber shell casings on the left side of the vehicle, near the spot where emergency personnel found Willis's body.  (Pine Hill Def. Mot. Summ. J., Exh. B, p. 2.)

4

Summ. J., Exh. C, pp. 2-10.)  She told Kellejan that the men confronted her in the doorway of the apartment building after the shooting, and that Miles threatened to have Ms. Duckett, and her family, killed.  (Pine Hill Def. Mot. Summ. J., Exh. C, pp. 13-15.) Ms. Duckett believed that Miles was at the Pine Hill Gardens Apartments because "he is a pimp, I was his property, I was his bitch and when you belong basically to a pimp, you don't go with anybody else." (Pine Hill Def. Mot. Summ. J., Exh. C, p. 15.)  Because of this, Ms. Duckett was extremely afraid of Miles, to the point that she failed to disclose all her observations to the police.  (Pine Hill Def. Mot. Summ. J., Exh. C, p. 20). Eager to move on with her life, however, Duckett divulged her knowledge about Miles.  (Pine Hill Def. Mot. Summ. J., Exh. C, pp. 16-17.)

Following Kellejan's second interview with Michele Duckett, he interviewed Nathaniel Brooks, Eric Moore, and Jason Williams with respect to their presence at the crime scene.  All three offered substantially the same testimony: they were in the apartment parking lot with Miles when Marcus Willis and Michele Duckett arrived; Miles confronted Willis about the latter's involvement with Duckett; and Miles shot Willis at close range with a handgun.  (Pine Hill Def. Mot. Summ. J., Exh. D, pp. 2-3.)  Although Williams ran away from the scene, Moore and Brooks testified that they entered the apartment building with Miles.  At that point, they claim that Miles threatened them. (Pine Hill Def. Mot. Summ. J., Exh. D, pp. 2-3.)  Furthermore, all three identified Miles in a one-to-one photograph display.  (Pine Hill Def. Mot. Summ. J., Exh. D, pp. 2-3.)

Based on the testimony of Michele Duckett and the three eyewitnesses to the shooting, Kellejan and Defendant Det. Sgt. Michael Carroll of the Pine Hill Police Department sought a warrant for Miles's arrest for the murder of Marcus Willis.  The statement of probable cause for the warrant emphasized:

> Statements by multiple witnesses that each observed the defendant draw a handgun from his clothing and fire in the direction of the victim numerous times from close range, at which time the victim collapsed to the ground; . . . .

(Pine Hill Def. Mot. Summ. J., Exh. E.)  After Miles's arrest, a New Jersey grand jury returned a seventeen count indictment against him in 2002.[4]  (Pine Hill Def. Mot. Summ. J., p. 5, ¶ 20.)  Pursuant to two unrelated incidents, Miles was also indicted on two counts of committing an act of sexual penetration upon a minor, contrary to N.J. Stat. Ann. § 2C:14-2c(4).  (Camden Def. Mot. Summ. J., Exh. D.)

Rather than proceed with trial, Miles and the Camden County Prosecutor's Office reached a plea agreement on September 23, 2003.  Miles pled guilty to unlawful possession of a weapon by a convicted felon and one count of sex with a minor, in

---

[4] The indictment alleged first degree murder, contrary to N.J. Stat. Ann. § 2C:11-3(a)(1)-(2); unlawful possession of a handgun without a permit, contrary to N.J. Stat. Ann. § 2C:39-5b; and second degree possession of a weapon for an unlawful purpose, contrary to N.J. Stat. Ann. § 2C:39-4a.  The grand jury also charged Miles with making terroristic threats, contrary to N.J. Stat. Ann. § 2C:12-3a (four counts, third degree); hindering apprehension or prosecution, contrary to N.J. Stat. Ann. § 2C:29-3b(3) (five counts, third degree); and tampering with witnesses and informants, contrary to N.J. Stat. Ann. § 2C:28-5a(1)-(2) (four counts, third degree).  As stated below, however, Miles pled guilty only to a second degree "certain persons" offense – being a convicted felon in possession of a firearm, contrary to N.J. Stat. Ann. § 2C:39-7b.

6

exchange for the dismissal of all other counts.  (Camden Def. Mot. Summ. J., Exh. E.)

The plea agreement yielded consecutive prison sentences of 20 and 10 years, with 15

years to be served without the possibility of parole.  (Camden Def. Mot. Summ. J., Exh.

F.)  Defendants emphasize that Miles was satisfied with the services rendered by his

attorneys and knowingly admitted his guilt to the two crimes.  (See, e.g., Pine Hill Def.

Mot. Summ. J., p. 6, ¶¶ 26-29.)

## II. DISCUSSION

### A.  Summary Judgment Standard

This Court will enter summary judgment only when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); accord Pearson v.

Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986)).

An issue is "genuine" if supported by evidence such that a reasonable jury could

return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a

dispute about the facts might affect the outcome of the suit.  Id.  This Court must view the

facts and all reasonable inferences drawn from those facts in the light most favorable to

the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  However, "[i]f the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support."  Luthe v. City of Cape May, 49 F. Supp. 2d 380, 388 (D.N.J. 1999) (internal quotation marks and citations omitted).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  FED R. CIV. P. 56(e); Celotex, 477 U.S. at 323; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)); see also Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  In fact,

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a

> party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations remain within the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. Federal Civil Rights Claims**

Miles asserts claims against all Defendants for violations of his Fourth and Fourteenth Amendment rights. Specifically, Miles alleges a deprivation of his "right to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, to be secure in one's person and property."

**1. Municipal Liability - County of Camden and City of Pine Hill**

**a. Vicarious Liability**

Miles's complaint suggests that the two public entities failed to monitor their employees, and that this lack of supervision emboldened the individual defendants to abuse their authority and harm Miles. The Court interprets the complaint to allege vicarious liability.

To be sure, the Supreme Court concluded almost thirty years ago that

9

"municipalities and other local government units [are] included among those persons to whom § 1983 applies."  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978) (overruling Monroe v. Pape, 365 U.S. 167 (1965)); see Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 n.7 (1989).  However, courts recognize that § 1983 imputes municipal liability only if the government itself "causes" damages.  See Monell, 436 U.S. at 692 ("[T]he fact that Congress did specifically provide that A's tort becomes B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent.").  This causation requirement explicitly precludes relief for a local government's alleged vicarious liability: "'[S]ection 1983 will not support a claim based on a respondeat superior theory of liability.'" Jimenez v. New Jersey, 245 F. Supp. 2d 584, 586 n.3 (D.N.J. 2003) (quoting Polk County v. Dodson, 454 U.S. 312, 325 (1981)); see Monell, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  Therefore, to the extent Miles imputes vicarious liability to the County of Camden and City of Pine Hill for the actions of their employees, this Court must grant the public entities' motions for summary judgment.

### b. Liability for an Official Policy and Custom

Beyond vicarious liability, however, Miles alleges that the County of Camden and

City of Pine Hill permitted, encouraged, tolerated and ratified the abusive practices and policies that caused his constitutional injuries.  He further alleges that the two governments were deliberately indifferent to the need to train their agents to refrain from unconstitutional conduct.

Notwithstanding the Monell Court's unwillingness to expose local governments to *respondeat superior* liability under § 1983, it permitted civil rights suits when "action pursuant to official municipal policy of some nature caused a constitutional tort."  436 U.S. at 691.  Monell recognized a right to relief from unconstitutional conduct performed pursuant to either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," id. at 690; or a well settled local custom or practice.  Id. at 691  However, the official policy or custom must be "the moving force of the constitutional violation" in order to establish municipal liability under § 1983.  Id. at 694; see Bd. of County Com'rs v. Brown, 520 U.S. 397, 404 (1997).

Furthermore, the Supreme Court adheres to the view that inadequate training "may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Brown, 520 U.S. at 410.  The deliberate indifference "necessary to trigger municipal liability" likely requires the public entity to display

11

"continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct by employees." Id. at 407; see also Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).  To qualify as the "moving force," the plaintiff may need to show that a pattern of tortious conduct, "rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident," caused his injury.  Brown, 520 U.S. at 407-08.

Here, the Court recognizes the severity of Miles's allegations.  However, Miles provides the Court with no evidence purporting to show an official policy of the County of Camden or the City of Pine Hill to engage in the type of behavior of which he complains.  Miles has offered no evidence that the public entities knew or should have known of particular misconduct by their agents.  Likewise, he offers no evidence that the entities disregarded a dangerous potential for misconduct.  He has not come forward with sufficient evidence to create a genuine issue of material fact.  Rather, Miles largely rests on the general allegations of his complaint.  Unsupported allegations ordinarily are insufficient to withstand a motion for summary judgment.  See FED. R. CIV. P. 56(e); Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

As part of his opposition to the defendants' motions for summary judgment, Miles attaches the affidavit of Ms. Le'Andra S. Dunlap.  (Pl. Opp., Exh. C.)  The affidavit attempts to show that the defendants acted improperly to secure the second indictment against Miles.  Ms. Dunlap affirms that she engaged in sexual intercourse with Miles, but

12

adds that it was without his knowledge, as he was drunk at the time, and without Dunlap

telling him that she was a minor.  She states that Detectives Kellejan and Carroll

misrepresented themselves to her to obtain information about her relationship with Miles.

This evidence is insufficient to create a genuine issue of material fact.  There is no

intimation that Kellejan and Carroll followed official policy or custom.  Furthermore, the

statement fails to show that the municipal defendants acted with deliberate indifference

toward Miles's constitutional rights or that a specific policy or custom was the "moving

force" behind the alleged constitutional violations.  As Ms. Dunlap's affidavit constitutes

Miles's only nonconclusory evidence, the Court will grant the motions of the County of

Camden and the City of Pine Hill for summary judgment with respect to Miles's

allegations of municipal liability.

### 2. False Arrest and False Imprisonment Claims

Miles alleges that all Defendants acted under color of state law to violate his "right

to be free from unreasonable searches and seizures, false arrest, false imprisonment . . .

[and] to be secure in one's person and property."  (Am. Compl. ¶¶ 31, 38, 40.)

Defendants, however, argue that probable cause existed to justify the arrest and detention

of Miles.  Because successful false arrest and false imprisonment claims require a

showing that probable cause did not exist, Defendants urge this Court to grant them

summary judgment.[5]

---

[5] "Generally, 'the question of probable cause in a section 1983 damage suit is for
the jury.'" Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (quoting

### a. Probable Cause to Issue the Warrant

To protect against unreasonable arrests, the Constitution requires that "no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. CONST. amend. IV (emphasis added).  Therefore, "'[t]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.'"  Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)); see also Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997).  Similarly, the plaintiff must demonstrate a lack of probable cause to prevail on a false imprisonment claim.  See Groman, 47 F.3d at 636 ("[W]here the police lack probable cause to make an arrest, the arrestee [also] has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."); Garlanger v. Verbeke, 223 F. Supp. 2d 596, 606-07 (D.N.J. 2002).

---

Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)).  However, this Court may find the existence of probable cause and enter summary judgment "if the evidence, viewed most favorably to [p]laintiff, reasonably would not support a contrary factual finding."  Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997); see also Deary v. Three Un-Named Police Officers, 746 F.2d 185, 190-92 (3d Cir. 1984) (refusing to permit summary judgment because of genuine issues of material fact with respect to both the plaintiff's resemblance to an alleged bank robber, and the reasonableness of characterizing the plaintiff's jogging as "flight").

"Probable cause" reflects the presence of "'facts and circumstances . . . that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 363 (3d Cir. 2003) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  Thus, arresting officers may be liable for an arrest only if "no reasonable competent officer" would conclude that probable cause existed.  Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Furthermore, "[e]vidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).

According to the documentation in support of the motions for summary judgment, Defendants Kellejan and Carroll conducted a thorough investigation of the facts.  Based on two interviews with Ms. Michele Duckett, they learned the identities of four of the five men that formed the group outside Pine Hill Gardens Apartments on July 13, 2001. According to the record, Kellajan and Carroll received consistent stories from three of these individuals – Nathaniel Brooks, Eric Moore, and Jason Williams – regarding the actions of Miles.  Specifically, the three stated that they were in the apartment parking lot with Miles when Marcus Willis and Michele Duckett arrived; Miles confronted Willis about the latter's involvement with Duckett; and Miles shot Willis at close range with a handgun.  All three identified Miles in a one-to-one photograph display as well.

15

Based on this testimony, and the presence of six shell casings near the spot where Marcus Willis fell to the ground, Kellejan and Carroll procured a warrant for Miles's arrest.  Clearly, the sum of information established sufficient probable cause to arrest Miles.  Cf. Russo v. Voorhees Twp., 403 F. Supp. 2d 352, 356-57 (D.N.J. 2005) (noting the existence of probable cause when an officer learns of a sexual assault, and the assault victim identifies the assailant).

Because the presence of probable cause defeats otherwise valid claims for false arrest and false imprisonment, the Defendants have carried their burden to show that no genuine issue of "material" fact exists.  Accordingly, Rule 56(e) requires Miles to identify specific facts and affirmative evidence, through the use of affidavits or otherwise, showing that there is a genuine issue for trial.  Miles fails to make the required showing.  Rather than present specific evidence, Miles relies on the conclusory allegations set forth in his complaint.  Miles states that the "investigative record . . . confirms that the defendants knew or should have known prior to obtaining an arrest warrant for the Plaintiff for first degree murder that there was insufficient probable cause to arrest Plaintiff for the murder of Marcus Willis."  (Pl. Opp., pp. 1-2, ¶ 6.)  Miles repeats this general allegation three other times.  (Pl. Opp., pp. 2-3, ¶¶ 10, 14, 15.)  However, Miles proffers no evidence to contradict the defendants' documentation.  Reliance on the conclusory allegations of a complaint or responsive pleading does not suffice to create a genuine issue of material fact.

### b. Alleged Use of False Information to Procure the Arrest Warrant

Conceding the existence of an arrest warrant, Miles instead argues that Defendants used false information to procure it.  (See, e.g., Am. Compl. ¶¶ 20, 26.)  It is true that "an arrest warrant does not, in and of itself, protect an officer from liability for false arrest."  Russo, 403 F. Supp. 2d at 357 (citing Sherwood, 113 F.3d at 399).  However, the existence of an arrest warrant *does* impose additional substantive requirements on Miles.  He must show,

> by a preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."

Wilson, 212 F.3d at 786-87 (quoting Sherwood, 113 F.3d at 399).  False statements or omissions are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'"  Id. at 788 (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Here, Miles fails to identify specific facts and affirmative evidence, through the use of affidavits or otherwise, showing there is a genuine issue for trial.  Cf. Russo, 403 F. Supp. 2d at 357 (finding, for the purposes of summary judgment, that telephone records and a rape victim's requests for money were "the kinds of things that the

17

municipal judge would wish to know"). Miles repeats in his opposition brief that "there was insufficient probable cause to arrest" him for the murder of Marcus Willis. (Pl. Opp., p. 2, ¶¶ 6, 10.) This unsupported allegation is insufficient to survive a motion for summary judgment.

### 3. Malicious Prosecution

As part of his federal civil rights claim, Miles alleges that Defendants violated his right to be free from malicious prosecution. Because Miles fails to satisfy one of the mandatory elements of a malicious prosecution claim, this Court must grant Defendants' motions for summary judgments on this ground.

Section 1983 recognizes actions for malicious prosecution. See Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988), *abrogated in part by* Albright v. Miller, 510 U.S. 266 (1994) (plurality opinion). To prevail in a § 1983 malicious prosecution action, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding;
> (2) the proceeding terminated favorably to the plaintiff;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted with malice or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

See DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). Thus, similar to false arrest and false imprisonment claims under § 1983, successful malicious prosecution claims require

18

a showing that no probable cause existed to pursue criminal proceedings.  See, e.g.,

Montgomery, 159 F.3d at 124; Garlanger, 223 F. Supp. 2d at 607; Luthe, 49 F. Supp. 2d

at 392.

 Miles bases his malicious prosecution claim on the alleged Fourth Amendment

violations arising from his arrest and criminal indictment.  This Court has already

concluded that probable cause existed to procure an arrest warrant for the July 13, 2001

murder of Marcus Willis.  Accordingly, this Court must grant Defendants' motions for

summary judgment on the § 1983 malicious prosecution claim.  See Wright v. City of

Phila., 409 F.3d 595, 604 (3d Cir. 2005).

 Furthermore, the Third Circuit instructs that "a grand jury indictment or

presentment constitutes prima facie evidence of probable cause to prosecute" in a § 1983

malicious prosecution action.  Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989).

Although Rose adds that "this prima facie evidence may be rebutted by evidence that the

presentment was procured by fraud, perjury or other corrupt means," id., Miles has

offered no evidence, in the form of affidavits or otherwise, to suggest this possibility.

Rather, he repeats the conclusory allegations from his complaint. He alleges that "[t]he

defendants intentionally falsified police reports, withheld exculpatory evidence, coerced

witnesses, provided false information to defense counsel and submitted perjured

testimony to the grand jury" to secure his criminal indictment.  (Pl. Opp., p. 5; see also

Am. Compl. ¶ 14.)  As this Court emphasized earlier, Miles may not rest upon mere

allegations or vague statements to withstand Defendants' properly supported motions for summary judgment.

Because this Court concludes that probable cause existed both to arrest and seek a criminal indictment, this Court need not address Defendants' (1) qualified immunity and (2) statute of limitations defenses.  Similarly, the Court has no occasion to address Defendants' argument that Miles's malicious prosecution claim fails because there is no evidence that the underlying criminal proceedings terminated in his favor.  The Court will grant the motions for summary judgment as to all of Miles's federal law claims.

**C. State Law Claims**

In addition to his federal law claims, Miles brings an assortment of state law claims.  (See Am. Compl. ¶ 42.)  28 U.S.C. § 1367 governs the Court's exercise of supplemental jurisdiction over these remaining claims.  Section 1367 provides in pertinent part:

> (a) . . . [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
>
> . . . .
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367.  Because the Court grants Defendants' motions for summary judgment

with respect to Miles's federal civil rights claims, the Court declines to exercise

supplemental jurisdiction over the remaining state law claims.  Accordingly, Miles's state

law claims will be dismissed without prejudice.

### III. CONCLUSION

Based on the foregoing, Defendants' motions for summary judgment will be

granted with respect to Miles's federal civil rights claims.  Miles's state law claims will

be dismissed without prejudice.

An appropriate Order will be entered this date.


_____   /S/ Joseph H. Rodriguez
                                    Joseph H. Rodriguez, U.S.D.J.

Dated: December 20, 2006